Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIDNEY DREYER, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| PROTEOSTASIS THERAPEUTICS, INC., DAVID ARKOWITZ, FRANKLIN BERGER, MEENU CHHABRA, BADRUL A. CHOWDHURY, KIM COBLEIGH DRAPKIN, EMMANUEL DULAC, and JEFFERY W. KELLY, | |
| Defendants. | |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Sidney Dreyer ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is an action against Proteostasis Therapeutics, Inc. ("Proteostasis" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

1

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed reverse merger between Proteostasis and Yumanity Therapeutics, Inc. ("Yumanity").

2. Proteostasis is a clinical stage biopharmaceutical company committed to the discovery and development of novel therapeutics to treat cystic fibrosis, a disease caused by defects in the function or abundance of cystic fibrosis transmembrane conductance regulator ("CFTR"). Proteostasis has sought to treat cystic fibrosis through theratyping, or the process of matching modulators to individual response to treatment regardless of CFTR mutations.

3. On August 22, 2020, Proteostasis entered into an Agreement and Plan of Merger and Reorganization (the "Merger Agreement"), pursuant to which Pangolin Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Proteostasis, will merge with and into Yumanity, with Yumanity surviving as a wholly-owned subsidiary of Proteostasis (the "Proposed Transaction").

4. Under the terms of the Merger Agreement, each outstanding share of Yumanity capital stock will receive approximately 3.6332 shares of Proteostasis common stock (the "Exchange Ratio"). Immediately following the Proposed Transaction, Proteostasis securityholders are expected to own approximately 32.5% of Proteostasis common stock while Yumanity's securityholders are expected to own approximately 67.5% of Proteostasis common stock.

5. Additionally, Proteostasis will enter into a Contingent Value Rights Agreement (the "CVR Agreement") pursuant to which, for each share of Proteostasis common stock held, Proteostasis stockholders of record as of immediately prior to the effective time of the Proposed Transaction will receive one contingent value right ("CVR"). The CVR will entitle such holders

to receive certain net proceeds, if any, derived from the grant, sale, or transfer of rights of all or any part of Proteostasis's intellectual property relating to its cystic fibrosis clinical programs (the "CF Assets") prior to the completion of the Proposed Transaction or during the nine-month period thereafter. The portion of net proceeds to which CVR holders will be entitled will depend on when a sale of the CF Assets is completed.

6. On September 23, 2020, Defendants caused to be filed with the SEC a Form S-4 Registration Statement under the Securities Act of 1933 (the "Registration Statement") in connection with the Proposed Transaction.

7. The Registration Statement, which recommends that Proteostasis stockholders vote in favor of, among other things, the issuance of Proteostasis common stock in connection with the Proposed Transaction (the "Stock Issuance"), omits and/or misrepresents material information concerning: (1) Proteostasis's and Yumanity's financial projections and the value of Proteostasis's CF Assets; (2) the financial analyses performed by Proteostasis's financial advisor, MTS Health Partners, L.P. and/or its affiliate, MTS Securities, LLC (collectively, "MTS"), in connection with their fairness opinion presented to the Board; (3) the sales process leading up to the Proposed Transaction; and (4) potential conflicts of interest involving Company insiders.

8. These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision relating to the Proposed Transaction and Stock Issuance proposal. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the anticipated shareholder vote on the Proposed Transaction and/or Stock Issuance.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York.[1]

12. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13. Plaintiff is, and has been at all relevant times hereto, an owner of Proteostasis common stock.

14. Defendant Proteostasis is a clinical stage biopharmaceutical company that engages in the discovery and development of novel therapeutics to treat cystic fibrosis. The Company is

---

[1] For example, in 2019, the Company reportedly participated in conferences in New York City. *See, e.g.,* Proteostasis Therapeutics, Inc., *Investor Relations, Event Details*, https://ir.proteostasis.com/events/event-details/leerink-partners-8th-annual-global-healthcare-conference (last visited Oct. 28, 2020); Proteostasis Therapeutics, Inc., *Investor Relations, Event Details*, Proteostasis Therapeutics, Inc., *Investor Relations, Event Details*, https://ir.proteostasis.com/events/event-details/2019-cantor-global-healthcare-conference (last visited Oct. 28, 2020).

4

incorporated in Delaware. The Company's common stock trades on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol, "PTI."

15. Defendant David Arkowitz ("Arkowitz") is a director of the Company.

16. Defendant Franklin Berger ("Berger") is Chairman of the Board of the Company.

17. Defendant Meenu Chhabra ("Chhabra") is President, Chief Executive Officer ("CEO"), and a director of the Company.

18. Defendant Badrul A. Chowdhury ("Chowdhury") is a director of the Company.

19. Defendant Kim Cobleigh Drapkin ("Drapkin") is a director of the Company.

20. Defendant Emmanuel Dulac ("Dulac") is a director of the Company.

21. Defendant Jeffery W. Kelly ("Kelly") is a co-founder and director of the Company. Defendant Kelly is also a director of Yumanity and will be a director of the combined company upon consummation of the Proposed Transaction.

22. Defendants Arkowitz, Berger, Chhabra, Chowdhury, Drapkin, Dulac and Kelly are collectively referred to herein as the "Individual Defendants."

23. Defendants Proteostasis and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

24. On August 24, 2020, Proteostasis and Yumanity announced that they had entered into a definitive merger agreement. Under the terms of the agreement, Proteostasis will acquire all outstanding shares of Yumanity in exchange for newly-issued shares of Proteostasis common stock, and existing Proteostasis shareholders will own approximately 32.5% of the combined company. The press release states, in pertinent part:

## **Yumanity Therapeutics and Proteostasis Therapeutics Announce Merger Agreement**

- Combined companies to leverage their common scientific expertise in protein misfolding -
-Focus on Yumanity's lead clinical program in Parkinson's disease and transformative pipeline of disease-modifying treatments for neurogenerative disorders -
- Companies to host joint conference call today, August 24, at 8:00 AM ET -

NEWS PROVIDED BY
Proteostasis Therapeutics, Inc.
Aug 24, 2020, 07:00 ET

BOSTON, Aug. 24, 2020 /PRNewswire/-- Yumanity Therapeutics and Proteostasis Therapeutics, Inc. (Nasdaq: PTI) today announced that the companies have entered into a definitive merger agreement. The combined company, operating under the name Yumanity Therapeutics, Inc., will leverage a common scientific expertise in the area of protein misfolding to advance Yumanity's pipeline of innovative, disease-modifying programs for neurodegenerative diseases.

Yumanity's first clinical-stage product candidate, YTX-7739, is currently in Phase 1 clinical development for the treatment and disease modification of Parkinson's disease. Yumanity is also advancing several additional candidates for other neurodegenerative disorders, including dementia with Lewy bodies, multi-system atrophy, amyotrophic lateral sclerosis (ALS or Lou Gehrig's disease), and frontotemporal lobar dementia (FTLD).

"The combination of PTI and Yumanity brings together two technologies rooted in a shared scientific legacy of protein misfolding as the basis of disease, as well as capabilities and resources that offer shareholders a broad platform for value creation," commented Meenu Chhabra, President and Chief Executive Officer of PTI. "We believe the combined company is well-positioned to advance multiple programs into and through the clinic, including Yumanity's lead candidate YTX-7739, currently in Phase 1 trials for the treatment of Parkinson's disease. We are excited to be working with Yumanity's management team and leading investors to complete the merger."

Yumanity has raised more than $100 million from leading investors that include Alexandria Venture Investments, Biogen, Fidelity, Merck, Pfizer, Redmile Group, and Sanofi Ventures. The Company also recently entered into a strategic research collaboration with Merck (known as MSD outside the United States and Canada) for the discovery and development of novel agents for the treatment of ALS and FTLD with Yumanity eligible to receive future payments totaling approximately $500 million in addition to royalties on the net sales of any marketed products. Upon the anticipated closing of the merger between PTI and Yumanity, Richard

6

Peters, M.D., Ph.D., President, Chief Executive Officer and Director of Yumanity, will become President, Chief Executive Officer and Director of the combined company.

"Yumanity's state-of-the-art R&D efforts and deep insights into new potential targets to treat neurodegenerative diseases places us on a rapid trajectory toward our goal of revolutionizing the treatment of these disorders. Our merger with PTI should enable the combined company to grow faster, deliver potential therapies to patients more quickly and create sustainable shareholder value well beyond what either of us would achieve separately," said Dr. Peters. "We have made significant clinical and business progress over the past several months, including our recent strategic research collaboration with Merck and our Series C financing. This merger also ensures that we have access to the additional capital we will need to advance our pipeline of disease-modifying therapies."

"Today's announcement brings together two organizations that share a common scientific heritage in the science of protein misfolding and brings that science one step closer to novel solutions for patients suffering from the debilitation of neurodegenerative diseases," said Tony Coles, M.D., Chairman and Co-founder of Yumanity Therapeutics. "We look forward to continuing this important clinical work on behalf of patients as we make this transition to becoming a public company."

**Proteostasis' Cystic Fibrosis (CF) Program Update**
PTI also announced today that it is pursuing a strategic transaction related to its proprietary CFTR modulators. PTI plans to share proceeds from any monetization of its CF assets through contingent value rights (CVR). PTI stockholders of record as of the close of the merger would receive a portion of any upfront payment and CVRs entitling the holders to all net proceeds from any future milestones derived from the grant, sale or transfer of rights by PTI through a transaction completed from now until the closing of the merger. PTI stockholders of record would also be entitled to a portion of any net proceeds from a transaction completed within nine months of the closing of merger. In addition to the merger agreement, a form of the CVR agreement outlining the mechanism for distributing of any such proceeds to legacy PTI holders will be filed with the U.S. Securities and Exchange Commission on Form 8-K.

PTI's CFTR modulators are currently being studied as part of the CHOICES development program. 502 subjects have completed enrollment in the organoid portion of the study, with data expected in the fourth quarter of 2020.

"We believe that our CF drug candidates have the highest probability of reaching patients in the hands of a pharmaceutical company with global development and commercialization capabilities that shares our vision of empowering the global CF patient community with more treatment options is realized," said Ms. Chhabra. "It

7

has been an honor to serve the CF community in the fight to bring new treatment options to patients and their families."

**About the Proposed Merger**
Under the terms of the merger agreement, PTI will acquire all outstanding shares of Yumanity in exchange for newly-issued shares of PTI common stock. Upon completion of the proposed acquisition, it is anticipated that existing PTI shareholders will own approximately 32.5% of the combined company and Yumanity shareholders will own approximately 67.5% of the combined company. The actual allocation will be subject to adjustment based on each company's outstanding equity ownership and Proteostasis' net cash balance at the time of closing of the merger. Following completion of the merger, the Yumanity Board of Directors will be expanded to nine persons to include the appointment of two current Proteostasis directors. The existing Yumanity Directors will continue to serve in their current positions and Dr. Coles will remain as chairperson.

The transaction has been approved by the boards of directors of both companies. The merger is expected to close in the fourth quarter of 2020, subject to customary closing conditions, including approval of the merger by the shareholders of PTI. The combined company is expected to trade on the NASDAQ Global Market under the ticker symbol YMTX.

In conjunction with this merger announcement, PTI has reduced its workforce by 79%. As of today, PTI has five full time employees supporting the proposed merger transaction and strategic efforts related to PTI's CF assets.

MTS Health Partners, L.P. is serving as the exclusive financial advisor to PTI and Cooley LLP is serving as legal counsel to PTI. Goodwin Procter LLP is serving as legal counsel for Yumanity.

\*        \*        \*

**About Proteostasis Therapeutics, Inc.**
Proteostasis Therapeutics, Inc. is a clinical stage biopharmaceutical company developing small molecule therapeutics to treat cystic fibrosis and other diseases caused by dysfunctional protein processing. Headquartered in Boston, MA, the Proteostasis Therapeutics team focuses on identifying therapies that restore protein function. For more information, visit www.proteostasis.com.

**About Yumanity Therapeutics, Inc.**
Yumanity Therapeutics is a clinical-stage biopharmaceutical company that is accelerating the revolution in the treatment of neurodegenerative diseases through its transformative scientific foundation and drug discovery platform. The Company's most advanced product candidate, YTX-7739, is currently in Phase 1 clinical development for Parkinson's disease. Yumanity's drug discovery platform allows the Company to rapidly screen for disease-modifying therapies to overcome

toxicity of misfolded proteins in neurogenerative diseases. Yumanity's growing pipeline consists of additional programs focused on Lewy body dementia, amyotrophic lateral sclerosis (ALS), and Alzheimer's disease. For more information, please visit www.yumanity.com.

### B. The Registration Statement Contains Materially False and Misleading Statements and Omissions

25. The Registration Statement omits and/or misrepresents material information concerning: (1) Proteostasis's and Yumanity's financial projections and the value of Proteostasis's CF Assets; (2) the financial analyses performed by MTS in connection with its fairness opinion; (3) the sales process leading up to the Proposed Transaction; and (4) potential conflicts of interest involving Company insiders.

26. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Financial Projections Used in Connection with the MTS Opinion; (ii) Background of the Merger; (iii) Proteostasis Reasons for the Merger; and (iv) Opinion of Proteostasis' Financial Advisor.

27. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote, Proteostasis shareholders will be forced to make a voting decision on the Proposed Transaction and/or Stock Issuance without full disclosure of all material information.

28. Among other reasons, and as described more fully below, this information is material in light of the Registration Statement's acknowledgment that "Proteostasis . . . stockholders may not realize a benefit from the Merger commensurate with the ownership dilution they will experience in connection with the Merger[.]"

29. In the event Defendants fail to disclose the following information before the shareholder vote, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Proteostasis's and Yumanity's Financial Projections and the Value of Proteostasis's CF Assets

30.     The Registration Statement omits material information concerning the financial projections of Proteostasis and Yumanity and the value of Proteostasis's CF Assets.

31.     The Registration Statement provides that, in connection with its fairness opinion, MTS reviewed: (1) certain internal financial analyses and forecasts for Proteostasis that were prepared by Proteostasis management (the "Proteostasis Projections"); and (2) certain internal financial analyses and forecasts for Yumanity that were prepared by Yumanity (the "Unadjusted Yumanity Projections"), which were then adjusted by Proteostasis management to reflect differing underlying assumptions (the "Adjusted Yumanity Projections," together with the Proteostasis Projections and Unadjusted Yumanity Projections, the "Projections").

32.     The Registration Statement fails to disclose the Proteostasis Projections, including, to the extent available, Proteostasis's projected Cash Flows, Total Revenues, Gross Profit, and Net Income. The omission of this information prevents Proteostasis shareholders from effectively valuing the Company's future stand-alone value, and, in turn, impedes their ability to make an informed decision as to whether to vote in favor or against the Proposed Transaction and/or Stock Issuance.

33.     The Registration Statement fails to disclose the Unlevered Free Cash Flows for the Unadjusted Yumanity Projections even though this information was disclosed for the Adjusted Yumanity Projections for the years 2020 through 2039. *See* Registration Statement at 130. This omission is particularly material because the Unadjusted Yumanity Projections are generally more optimistic than the Adjusted Yumanity Projections over the long-term and Proteostasis stockholders otherwise have limited means to evaluate the proposed merger consideration as Yumanity is a private company.

10

34. Further, with respect to the Unadjusted Yumanity Projections and Adjusted Yumanity Projections, the Registration Statement fails to disclose: (1) all line items used to calculate (i) Total Revenue, (ii) Gross Profit, and (iii) Operating Income; and (2) a reconciliation of all non-GAAP to GAAP metrics.

35. Additionally, the Registration Statement fails to disclose the value of the "CF Assets." This is material because Proteostasis shareholders expect to receive CVRs for the CF Assets in connection with the Proposed Transaction, pursuant to which shareholders may receive compensation. A reasonable Proteostasis shareholder would therefore consider information relating to the value of the CF Assets material in deciding whether to vote in favor or against the Proposed Transaction and/or Stock Issuance.

36. The disclosure of the aforementioned projected financial information is also material because it would provide Proteostasis shareholders with a basis to project the future financial performance of Proteostasis and the combined company, would allow shareholders to value the proposed merger consideration, and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the prospects of the Company. Without such information, which is uniquely possessed by the Company and its financial advisor, Proteostasis's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction and/or Stock Issuance in connection with the Proposed Transaction.

37. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Proteostasis shareholders.

### 2. Material Omissions Concerning MTS's Financial Analyses

38. In connection with the Proposed Transaction, the Registration Statement omits

11

material information concerning MTS's financial analyses.

39. With respect to MTS's "*Liquidation Analysis*" of Proteostasis, the Registration Statement fails to adequately explain why Proteostasis directed MTS to assume that "the only material asset of Proteostasis was its cash and that Proteostasis does not currently, and does not intend in the future to, conduct any activity that may result in the generation of revenue." *See* Registration Statement at 123. This is particularly material in light of the fact that the Company's CF Assets, for which shareholders may receive additional merger consideration through CVRs, was not included in this analysis.

40. The Registration Statement fails to disclose the following concerning MTS's "*Discounted Cash Flow Analysis*" of Yumanity: (1) the assumptions underlying the (i) net present value of cash flows, and (ii) regulatory probabilities of success as provided by Proteostasis management; (2) MTS's basis for assuming no terminal value; and (3) the individual inputs and assumptions underlying the weighted average cost of capital of 12% to 16%.

41. With respect to MTS's "*Public Trading Comparable Companies Analysis*" of Yumanity, the Registration Statement fails to disclose the number of fully diluted outstanding shares and total cash and cash equivalents.

42. The valuation methods, underlying assumptions, and key inputs used by MTS in rendering its purported fairness opinion must be fairly disclosed to Proteostasis shareholders. The description of MTS's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Proteostasis shareholders are unable to fully understand MTS's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction and/or Stock Issuance. This omitted information, if

disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

43. The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

44. The Registration Statement provides that the Board established a Transaction Committee initially consisting of Defendants Berger, Drapkin, Kelly, and Chhabra "to provide additional board oversight and assistance in completing a review of Proteostasis' strategic options."[2] *See* Registration Statement at 106.

45. The Registration Statement, however, fails to explain why Defendant Chhabra (the Company's CEO) and Defendant Kelly (a director of Yumanity) were added to the Transaction Committee in light of their roles in the Proposed Transaction and their conflicting interests with other Proteostasis shareholders.[3]

46. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

47. The Registration Statement omits material information concerning potential

---

[2] According to the Registration Statement, the Board appointed Defendant Arkowitz to the Transaction Committee to replace Defendant Kelly on June 24, 2020, the same day Proteostasis and Yumanity entered into an Exclusivity Agreement. *See* Registration Statement at 111.

[3] Additionally, Defendant Chhabra was on the Transaction Committee which approved a Key Employee Retention Program (the "Retention Program"), pursuant to which the remaining five Proteostasis employees, including Ms. Chhabra, will receive a one-time retention incentive award (the "Retention Awards"). *See* Registration Statement at 132. Defendant Chhabra's Retention Award is $283,290.00. *See Id.*

conflicts of interest involving Company insiders.

48. The Registration Statement provides that, following consummation of the Proposed Transaction: (1) the current executive officers of Yumanity are expected to become the combined organization's executive officers;[4] and (2) the combined organization's board of directors will consist of seven (7) members who are current directors of Yumanity and two (2) members who will be designated by members of the Proteostasis Board.[5] *See* Registration Statement at 5, 151.

49. The Registration Statement, however, fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

50. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

51. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

---

[4] The Registration Statement provides that the following individuals are expected to serve as executive officers of the combined company: Richard Peters, Paulash Mohsen, and Brigitte Robertson. *See* Registration Statement at 5, 151.

[5] The Registration Statement provides that the following individuals are expected to serve on the combined company's board on behalf of Yumanity: Richard Peters, N. Anthony Coles, Patricia L. Allen, Richard A. Heyman, Jeffery W. Kelly, Cecil B. Pickett, and Lynne Zydowsky. *See* Registration Statement at 5, 151.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

52. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

54. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

55. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction and/or Stock Issuance.

56. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

57. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

58. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

60. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the

statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of certain Individual Defendants to approve the Proposed Transaction and/or Stock Issuance. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

62. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction and/or Stock Issuance. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

63. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with or consummating the Proposed Transaction and any vote thereof, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.    In the event Defendants complete the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.    Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.    Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 28, 2020

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
      zhalper@halpersadeh.com

*Counsel for Plaintiff*